ILLINOIS CENTRAL RAILROAD COMPANY *v.* SAMUEL W. HOSKINS.

1. RAILROADS. *Ejectment against. Extent of recovery.*

Ejectment will lie against a railroad company to recover land upon which it has wrongfully entered and constructed its track; but the plaintiff's recovery, where the defendant acted in good faith, will be limited to the land itself, with compensation for any use to which the premises might reasonably have been put by him and a sum to cover all damages done thereto by the defendant; he cannot recover the track or any sum for the use thereof.

2. SAME. *Right to remove track. Spur track.*

A railroad track wrongfully constructed on land does not become a part of the freehold, and, upon ejection, the railroad company has the right to remove the track, and this right applies as well to a short spur track as to a trunk line.

FROM the circuit court of Lincoln county.

HON. ROBERT POWELL, Judge.

Hoskins, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. The action was ejectment for eighty acres of land, across a part of which

the defendant had constructed a spur railroad track.    Upon the
first trial of the case in the court below, it was decided for
the defendant and the plaintiff appealed, the first appeal, to
the supreme court.    See *Hoskins* v. *Illinois Central R. R. Co.,*
78 Miss., 768.    The case was reversed and defendant's claim
of title to the land practically adjudged invalid.    Upon being re-
manded to the court below, the case was again tried, resulting in
a judgment for plaintiff, awarding him the land and a personal
judgment for $1,800, subject to a credit of $300, as stated in
the opinion of the court; from this judgment the defendant ap-
pealed—the second appeal—to the supreme court.    Other
facts are stated in the opinion of the court.

*Mayes & Harris* and *J. M. Dickinson,* for appellant.

The whole case was tried below, so far as the question of
mesne profits is concerned, by an erroneous standard or test.
In brief, the idea developed by the plaintiff and made the
basis of his recovery, was this: Not compensation to him for
injury inflicted upon him by his exclusion from the premises
recovered, according to its reasonable rental value, but a de-
mand that the defendant should account to him for the value
of the premises to the defendant itself, calculated from the
point of view of the special and peculiar uses to which defend-
ant devoted it.

We submit that such is not the law, and that the plaintiff
cannot recover mesne profits on the basis of any special and
extraordinary benefit peculiar to himself, nor, on the other
hand, on the basis of any special and extraordinary benefit pe-
culiar to the defendant.    The true measure is the reasonable
rental value of the property in controversy, without reference
to special and extraordinary conditions.

The proper rule is laid down in *Kille* v. *Ege,* 82 Pa. St.,
102, 112.    We quote: "In an action for mesne profits the
plaintiff may recover for the fair rent or yearly value of the
premises, and for injury done thereto.    *Huston v. Wicker-*

*sham,* 2 W. & S., 308.   Compensation is the proper measure of damages.   *Morrison* v. *Robinson,* 7 Casey, 456.   The action is equitable in its character.   *Zimmerman* v. *Eshback,* 3 Harris, 417.   . . .   The fact that the plaintiffs in error had let the premises for a term of fifteen years at an annual rental value of $2,000, besides the payment of royalty on each ton of ore mined, and received the rent for one year, did not necessarily give the defendant in error the right to recover that sum," etc.

Sedgwick on Damages, vol. 3, sec. 908, states the rule as follows: "The general rule settled by modern decisions is that the compensation is to be measured by the annual income of the land, during the time possession is withheld.   Thus Ashurst, J., in *Utterson* v. *Vernon,* 3 T. R., 539, 547, said: 'The action for mesne profits, though in form it is an action of trespass, in effect is to recover the rent.'   So where the land recovered is uncultivated prairie land, from which no profit ever accrued, nothing can be recovered on account of mesne profits.   It is to be observed that the plaintiff recovers the value of the use of the premises, and not merely what the defendant actually received from his lessee.   The defendant's relations with his lessee are irrelevant and conversely, recovery cannot be had for the value of some special use to which the plaintiff might have put the property, but only the market value of the use. Damages should be not the actual yearly income of the property, but the fair annual value."

In *Bullock* v. *Wilson,* 3 Porter (Ala.), 382, the court below charged that the damages were the profits which the defendant had derived from the land.   This was held to be error, as the plaintiff was entitled to recover the damages which he had sustained by reason of being kept out of the possession, and these were not increased or diminished by the profits acquired by the defendant from his occupancy.

Sedgwick & Wait on Trial of Title to Land, in sec. 665, p.

495 (2d ed.), say as follows: "These cases show clearly that the damages and mesne profits, for which a disseizor can be held accountable, are now limited to strict compensation, and are no longer at large, or in the absolute discretion of the jury. Precise proof of value, injury, etc., must be furnished; the items of the loss and damage must be shown, and the verdict should conform to and reflect the details of the evidence. The action, as we have said, is now largely treated as if it were one of contract or for use and occupation. The nature of the injury to be redressed, the alterations in the remedy, and the fact that the disseizor, in the majority of cases, withholds the lands under a belief of title in himself renders it inadvisable in most cases to attempt to punish the possessor by awarding exemplary damages in the action."

It is true that some cases are to be found in which the rental value of a mill, as well as of its site, have been declared to be recoverable as mesne profits, and also the net profits of a ferry. But of these cases, it is to be observed:

First—That they are cases in which the industry is appurtenant to the premises so recovered, and, moreover, is entire in its nature, being capable of management and conduct on and as a part of such premises alone.

Secondly—The industry itself was of such nature as that it might just as well have been conducted by the plaintiff in ejectment as by the defendant, and was of common use, susceptible of management by any person disposed to take hold of it; it was such industry as might be supposed, and would, in fact, have a common market or rental value.

Those cases are wholly unlike the case at bar.

A railroad property is *sui generis.* The very essence of it and of its value is that it shall be a "going concern;" it is a unit. No given section, especially a short section, of its track or right of way is of any value whatever to any person in the world except the railroad company itself. It has, and can

have, no market or rental value. The entire track, further, disconnected from its motive power, rolling stock, and other agencies for the operation of the same, is in the same condition. These are facts of which the courts take judicial knowledge because they are matters of common information. They are facts, furthermore, which have led the courts to establish and administer many exceptional rules in the treatment of railroad property.

For instance, those cases which assert the right of the chancery courts under certain conditions to order the issuance of receiver's certificates which shall take priority over recorded mortgages; again, those cases which assert the power of chancery courts where a railroad lies partly within their territorial jurisdiction, to order the sale of a railroad as a unit even although part of the same lies beyond the limits of their territory—and other instances which will suggest themselves to the minds of the court. And, also, they are facts which have found expression in the statutes of this state, and of almost all other states of this Union, in the matter of taxation, whereby the special board of assessors is in some form or other provided for by law.

If the foregoing facts needed any re-enforcement, they are re-enforced and made conclusive by the fact that the elements of profit brought into view by the claim of plaintiff below are manifestly elements derived from the operation of the railroad track itself, that is to say, the superstructure.

Now, it is settled law in this state that the superstructure of a railroad is property which is affected with a public use, and is unlike other property, even considering it as real estate, in its relation to the action of ejectment. It cannot be recovered from the railroad company in ejectment. If the plaintiff in ejectment succeeds in his suit, all that he can possibly recover is the land on which the superstructure has been erected. *Railroad Co.* v. *LeBlanc,* 74 Miss., 650.

Was it ever heard of that plaintiff in ejectment could in that action, or any other as for that matter, recover as mesne profits the annual rental value or other profits of property which, as a rule of law, he could not possibly recover in his action? Manifestly, he may not.  Phrase it how you will, the mesne profits are merely an incident to the recovery of the land, and if he cannot recover the land itself (as in this instance the railroad superstructure), it is impossible that he shall recover what is merely an incident thereto.

Furthermore, even on a proceeding to condemn lands for a railroad right of way, it is a well settled rule that all that the land owner can recover by way of assessment is the actual value of the land taken and the injury which the taking will inflict upon the premises considered as a whole.  He can recover nothing more.  How much it may be worth to the company to build a road there is a question with which he has nothing to do. *Sullivan* v. *Lafayette County,* 61 Miss., 271.  Randolph an Eminent Domain, sec. 234, and cases cited.

It would seem clear on principle that if the right of way can be taken away from the land owner by condemnation and he shall not be entitled to have considered the special value of the premises condemned to the railroad company, neither can he have such special value considered as a demand for mesne profits in an action of ejectment when his action cannot possibly result in a recovery of the railroad superstructure itself because of the outstanding right in the company to condemn after judgment in ejectment, and to condemn without having to pay for the superstructure itself.

Therefore, what the plaintiff is entitled to have in this suit is the reasonable rental value of what he can take by his writ of *habere facias*; that is to say, the reasonable rental value of the land itself disconnected from the railroad superstructure and from any profit which is earned by the railroad superstructure as distinguished from the land itself.

*Harper & Potter,* for appellee.

No matter what may be the trend of decisions elsewhere, nor what may be the views and opinions of speculative text writers, the rule of recovery in a case like the one at bar is too firmly fixed by statute and decision in this state to admit of argument or controversy at this late day. In the case of *Miller* v. *Ingraham,* 56 Miss., 510, where a defendant in ejectment had bought a lot in Yazoo City and erected valuable improvements thereon, it was held that "if plaintiff in ejectment recovers the land sued for, he is entitled to the rents of the property as improved by the defendant, and the latter is entitled to the value of the improvements." Sections 1673 and 1674, code 1892. The question is not what was the rental value of the naked, barren tract of land, but what was the rental value of the land with a railroad on it. The land was worthless as agricultural land, but the rental value of the railroad track was considerable.

But it is urged by the appellant that a different rule must be applied to this case, since the trespasser is a railroad company and not an individual. The only case cited in support of this view is the case of *LeBlanc* v. *Railroad Co.,* 74 Miss., 650.

It is true that it was held in the *LeBlanc case* that the track or superstructure could not be recovered in the action of ejectment. But the decision in that case was based solely on the idea that the public interests demanded that a short section or link in a great highway should not be seized and taken possession of in a private action, thereby impeding its use and operation as such.

But in the case at bar no such public interest is involved. The short spur from the branch line was purely a private enterprise used by appellant to get out gravel from its pit for its own private purposes. It is no part of a great artery of commerce and travel. The loss of its use and occupation would in nowise injure the public at large. Hence, as to this private spur track, the relation of the parties stands exactly as if this were action between two individuals.

TERRAL, J., delivered the opinion of the court.

Samuel W. Hoskins brought an action of ejectment in the circuit court of Lincoln county against the Illinois Central Railroad Company for the N. half of the S. W. quarter of section 6, township 7 N., range 9 E. Two thousand five hundred dollars was demanded for the use and occupation of it by defendant. The defendant pleaded the general issue, and gave notice of valuable improvements put upon the land by it to the amount of $100,000. These improvements constitute the roadbed and track of about 1,000 feet across said land, being a part of its spur line from Brookhaven to a gravel pit beyond the same. The plaintiff had a recovery for his land, and also for $1,800 for the use and occupation of it for six years, with an allowance of $300 to defendant for its improvements. From a judgment entered in conformity with this verdict the Illinois Central Railroad Company appeals. The $1,800 allowed for rent to plaintiff arose, as it is claimed, by reason of the freights which the company should have received from hauling gravel and lumber taken at the east end of the spur road over the spur line and over its main line, whithersoever carried; one-third of which freights, it is asserted, should be paid to plaintiff, and which third was estimated, or rather guessed, to be $1,800. The $300 allowed to defendant for valuable improvements is the outcome of this 1,000 feet of railroad on plaintiff's land, which the evidence of a witness for the plaintiff showed it must have cost the defendant $2,000 to construct, while that of a witness for the defendant showed its building to have cost more than $3,400. This statement, considered in connection with the verdict, demonstrates, we think, the impropriety of the result here reached. The plaintiff should not have recovered $1,800 for the use and occupation, because no part of that sum arose from any use of the land to which the defendant could have devoted it, nor should the defendant have been allowed $300 for the value of the structures put by it upon the land, which structures it is en-

80 Miss.—47

titled to remove at its pleasure.    It is a general rule of law that whatsoever chattels are attached to the realty with the manifest intent that they remain there becomes part and parcel of it, and cannot be removed without the consent of the owner of the freehold to whom they are considered a gift; but to this rule there are exceptions, and among others is the superstructure of a railway company.    Such a company exercises the right of eminent domain—a governmental function—and takes no freehold, but a mere easement, and therefore cannot be said to have intended to attach its rails and ties and other appliances to the freehold.    They are constructed also for public use and enjoyment, and it is their quality in this respect that distinguishes the acts of the company in their construction from those of a trespasser or others; and, if the terms for acquiring this easement are too onerous, it may remove its rails and ties, and pass in another direction.    True, if it does not proceed in conformity with its power in the condemnation of the land for its right of way, and until it does so proceed, all its acts upon the land are trespasses, for which it is liable; and it may be put out of possession by ejectment.    The defendant here had good reason to think it had acquired a right of way over this tract of land, and it therefore is not liable for punitory damages; but for all its acts upon the land, unless and until it acquires a right of way, it is responsible as a trespasser.    This court, in *Railroad Co.* v. *Dickson,* 63 Miss., 380, 385 (63 Am. Rep., 809), approved the doctrine announced on this subject by the courts of Pennsylvania, Michigan, and Alabama.    In *Justice* v. *Railroad Co.,* 87 Pa., 28, it is said: "The common-law rule is undoubted that a trespasser who builds on another's land, dedicates his structures to the owner.    This case is not the case of a mere trespass by one having no authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having a right to enter, and to place these materials on the land taken for a public use—materials essential to the very purpose which the state has declared in the

grant of the charter. It is true, the entry was a trespass by reason of the omission to do an act required for the security of the citizen, to wit: to make compensation or give security for it. For this injury the citizen is entitled to redress. But his redress cannot extend beyond his injury. It cannot extend to the taking of the personal chattels of the railroad company. They are not his, and cannot increase his remedy. The injury was to what the landholder had himself, not to what he had not. Then why should the materials laid down for the benefit of the public be treated as dedicated to him? In the case of a common trespasser the owner of the land may take and keep his structures *nolens volens,* but not so in this case; for, though the original entry was a trespass, it is well settled that the company can proceed in due course of law to appropriate the land, and consequently to reclaim and avail itself of the structures laid thereon. Another evident difference between a mere *tort feasor* and a railroad company is this: the former necessarily attaches his structures to the freehold, for he has no less estate in himself; but the latter can take an easement only, and the structures attached are subservient to the purpose of the easement. A railroad company can take no freehold title, and when its proper use of the easement ceases, the franchise is at an end. There is no intention in fact to attach the structure to the freehold. We have, therefore, these salient features to characterize the case before us, to wit: The right to enter on the land under authority of law to build a railroad for public use; the acquisition thereby of a mere easement in the land; the entire absence of an intention to dedicate the chattels entering into its construction to the use of the land; the necessity for their use in the execution of the public purposes; and, lastly, the power to retain and possess these chattels and the structures they compose by a valid proceeding at law, notwithstanding the original illegality of the entry. There are some analogies bearing remotely on the question before us, showing that property is not gained by the owner of

the land because found upon it," etc.    In *Railroad Co.* v. *Dunlap,* 47 Mich., 456 (11 N. W., 271), the supreme court (p. 465, 47 Mich., and p. 273, 11 N. W.) said: "We are of opinion that no error was committed in excluding from the compensation allowed to Dunlap the value of the railroad track laid upon the land.    The railroad company, whether rightfully or wrongfully, laid this track while in possession, and for purposes entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railroad track laid on it, the technical rules which apply in some other cases to structures inseparably attached to the freehold."    In *Jones* v. *Railway Co.,* 70 Ala., 227, Brickell, C. J., ably demonstrates that the necessary structures for a railroad, placed upon land by one having the power of eminent domain, continue, under all circumstances, the personal chattels of such one.    This rule is announced in *Railroad Co.* v. *LeBlanc,* 74 Miss., 650, 673 (21 So., 760), where many of the authorities supporting it are cited with approval.    The plaintiff shows a right to recover the premises from the defendant, and he is entitled to recover also of defendant, for its use and occupation, a reasonable compensation for any use to which it could reasonably have been put by the plaintiff, and a further sum to cover all damages done upon the land by the defendant in constructing a roadbed for its railway track.    The plaintiff is to be compensated for all losses, but he should have no increased compensation by reason of its use as a part of the system of railroad operated by defendant.    *Sullivan* v. *Lafayette County,* 61 Miss., 271; *Kille* v. *Ege,* 82 Pa., 102; *Bullock* v. *Wilson,* 3 Port, 382; Sedg. Dam., sec. 908.    The appellee insists that these principles do not apply to this case because the 1,000 feet of roadbed here sued for is only a part of a short spur line, and not an essential or necessary part of defendant's main line; but the principle of law relating to the subject applies alike, we think, to both cases.

*Reversed and remanded.*