**TEXAS & N. O. R. CO. v. SCHOENFELD et al.**

**No. 10337.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 16, 1938.

Rehearing Denied Feb. 15, 1939.

Baker, Botts, Andrews & Wharton, of Houston, and Brooks, Napier, Brown & Matthews and Harper Macfarlane, all of San Antonio, for appellant.

Ingrum & Morris, of San Antonio, for appellees.

MURRAY, Justice.

Appellee, Mrs. Nellie Gillett Schoenfeld, joined by her husband, Charles M. Schoenfeld, instituted this suit against appellant, Texas & New Orleans Railroad Company, to recover damages alleged to have been sustained by virtue of the removal by the Railroad Company of a spur track which had been situated an a tract of land owned by Mrs. Schoenfeld.

The trial was to the court, without the intervention of a jury, and resulted in a judgment in Mrs. Schoenfeld's favor and against the Texas & New Orleans Railroad Company, in the sum of $2,203.12; from which judgment the Railroad Company has prosecuted this appeal.

The spur track involved herein was originally built upon the land by the S. A. & A. P. Railway Company in the year 1907. It was built for the purpose of serving a lime and brick kilns on the land. The trial judge was unable to determine who paid for the spur. Charles M. Schoenfeld purchased the sixty acres of land, on which the spur was located, in 1919, paying therefor the sum of $6000. Schoenfeld made this purchase with the view of establishing a rock quarry on the land, and did in fact establish such quarry, shipping out many carloads of rock. In 1924 Charles M. Schoenfeld entered into a contract for an extension of this spur. In December, 1931, Schoenfeld sold and conveyed the tract of land to his wife, Mrs. Nellie Gillett Schoenfeld. In the year 1936 the T. & N. O. Railway Company, being the successor in title to all the property theretofore belonging to the S. A. & A. P. Railway Company, entered upon the sixty acres and took up the ties and rails, etc., out of which the switch had been built and removed same from the premises. Mrs. Schoenfeld sues for the cost of replacing the switch.

The trial judge made the following findings of facts:

"1. That the plaintiff herein, Nellie Gillett Schoenfeld, is now and has been continuously since 1910, a married woman, whose husband is Chas. M. Schoenfeld, and that they are now husband and wife.

"2. That on or about the 14th day of October, 1919, Chas. M. Schoenfeld entered into a contract of sale, introduced in evidence, to purchase the real estate described in plaintiff's first amended original petition, and took actual physical possession of said real estate immediately after the execution of said contract of sale.

"3. That the said Chas. M. Schoenfeld was at said time engaged in the general

contracting business and that said sixty acres of land described in plaintiff's first amended original petition was contracted to be purchased by him for the purpose of extracting from said land rock and crushed stone to be used by the said Chas. M. Schoenfeld in his building operations and that such was his purpose in the acquisition of said real estate.

"4. That at the time the said Chas. M. Schoenfeld entered into possession of said sixty acres of land, there was situated and located upon said sixty acres of land a spur railroad track of approximately 651 feet in total length from the switch point on the San Antonio and Aransas Pass, Kerrville Division, main line to the terminus of such spur on said sixty acres of land, of which spur 213 feet was on the railroad right of way and 438 feet at that time, October 14, 1919, on said sixty acres.

"5. That said railroad spur then upon said land was connected with the main line of the Kerrville division of the San Antonio and Aransas Pass Railway Company by a spur line 213 feet in length that led in an Easterly direction from a switch located on the main line of the Kerrville Division of the San Antonio and Aransas Pass Railroad to the West property line of the real estate described in plaintiff's first amended original petition, and that said connection with said railroad main line spur constituted the Western terminus of the spur here in controversy, and that said spur which was upon the real estate described in plaintiff's first amended original petition was reasonably necessary for the use and purposes for which said real estate was purchased and intended.

"6. That said spur was at the time the said Chas. M. Schoenfeld went into possession of said sixty acres of land, October 14, 1919, firmly affixed to the soil, the ties of said spur upon which the rails were spiked being imbedded in the soil of said sixty acres of land, and in places said ties were covered by the soil of said Sixty acres, and that said spur was adapted to the use for which it was intended and susceptible of being used for the purpose for which the real estate described in plaintiff's first amended original petition was purchased and intended.

"7. That on or about the 16th day of March, 1920, the said Chas. M. Schoenfeld received a deed, introduced in evidence, conveying to him the title to said sixty acres of land, as had been contracted previously by the said Chas. M. Schoenfeld; and that the consideration for the conveyance of said sixty acres of land to the said Chas. M. Schoenfeld was the sum of $6,000.00, fully paid by him.

"8. That some time during the year of 1921 or 1922 the said Chas. M. Schoenfeld extended in an Easterly direction the original spur track that was upon the sixty acres described in plaintiff's original petition when the said Chas. M. Schoenfeld took possession of said sixty acres, said extension amounting approximately to 200 feet, and that after said extension had been constructed said entire spur measured approximately 838 feet from its Western terminus, the switch point on the San Antonio and Aransas Pass Railroad, to the end of said spur upon said sixty acres, and that said extension constructed in 1921 or 1922 was constructed by the said Chas. M. Schoenfeld at his own cost and expense.

"9. That from the time the said Chas. M. Schoenfeld went into possession of said sixty acres of land in 1919 until on or about May 1, 1925, in addition to the extension mentioned in paragraph 8 just above, the said Chas. M. Schoenfeld made numerous repairs and replacements to said spur upon said sixty acres, all at his own cost and expense, and that said repairs and replacements made during the years from 1919 to 1925 constituted repairs and replacements to approximately ninety-five per cent of said original spur, exclusive of the extension mentioned in paragraph 8 just above, and that all of said repairs and replacements were made by the said Chas. M. Schoenfeld at his own cost and expense.

"10. That on at least one occasion between 1919 and 1922, the said Chas. M. Schoenfeld discovered that the switch leading to the spur here in controversy from the main line of said railroad into and upon the sixty acres of land described in plaintiff's first amended original petition had been spiked down in such manner that cars from the main line could not be switched on to said spur; that upon the discovery of said condition by the said Chas. M. Schoenfeld he went to one Reynolds, an agent and employee of the San Antonio and Aransas Pass Railway Company and protested said condition and asked the reason why said switch had been spiked, and was told by the said Reynolds that the reason the switch had been closed was because the condition of the spur

track made it unsafe for the railroad company to place its equipment upon said spur; that said spur was the property of the said Schoenfeld; and that the railroad company would not open said switch or place any of its equipment upon said spur until the said Schoenfeld had, at his own cost and expense, repaired said spur track and placed the same in such condition as would make it safe for the railroad company to place its equipment thereon; and that as the result of said conversation the said Schoenfeld did make repairs on said spur upon said sixty acres here involved, all at his own cost and expense, and that after said repairs had been made the spike in said switch was removed and said switch was opened, and the spur used by the San Antonio and Aransas Pass Railroad to place its cars upon.

"11. That on or about November 19, 1924, the said Chas. M. Schoenfeld entered into a written contract, introduced in evidence, with the San Antonio and Aransas Pass Railway Company, for the construction of approximately 2,600 feet of spur track to be constructed upon the sixty acres of land described in plaintiff's first amended original petition, and which trackage was to be connected with the Eastern terminus of said original spur and which spurs contracted for in 1924 were to constitute and be for all purposes an addition to or extension of said original spur, and that the said Chas. M. Schoenfeld paid for said spurs to be constructed under the contract of November 19, 1924, the sum of $3,240.00.

"12. That said spurs contracted for under the contract of November 19, 1924, were not constructed exactly in accordance with the blue-print attached to said contract but that there was spur trackage constructed upon said contract and connected with said original spur and that regardless of how many feet of spur trackage was actually constructed on the sixty acres under the contract of November 19, 1924, all of said spur trackage so constructed was taken up about May 1, 1925, and removed to the said Chas. M. Schoenfeld's quarry at Beckman, Texas, a point about one mile North of the real estate described in plaintiff's said first amended original petition, all at a cost and expense to the said Chas. M. Schoenfeld of approximately $8,000.00, so that after the removal of said spur tracks in 1925 there remained upon the real estate described in plaintiff's first amended original petition the original spur track that was upon said sixty acres of land at the time of the execution of the contract of sale of October 14, 1919, to Chas. M. Schoenfeld and the extension thereof made by the said Chas. M. Schoenfeld in 1921 or 1922, and in fact there remained upon said sixty acres after the removal of the spur track in 1925 only the spur track that had been upon said sixty acres at the time of the execution of the contract of November 19, 1924.

"13. That after May 1, 1925, the said Chas. M. Schoenfeld discontinued his quarrying operations on the sixty acres of land described in plaintiff's first amended original petition, and has not since that time operated said premises for the purpose of extracting rock or crushed stone therefrom, and that from and after May 1, 1925, until on or about the 14th day of December, 1931, said spur track upon said sixty acres of land was used only upon rare and infrequent occasions, that is, that during the time from May 1, 1925, until some time in 1927 said spur track was used to spot some cars of water; to spot and store cars of dynamite, both for the use and benefit of and at the direction of the said Chas. M. Schoenfeld, and that during said time there was, in addition, two cars of feed consigned to a neighbor of the said Chas. M. Schoenfeld spotted on said spur for purposes of unloading, but that before the defendant, Texas and New Orleans Railroad Company, who on or about May 1, 1925, has acquired the business and properties of the San Antonio and Aransas Pass Railway Company, by merger, would spot said cars of feed upon said spur, they demanded and required that the consignee of said cars of feed first obtain the written consent of the said Chas. M. Schoenfeld to such use of said spur, and that since about 1928 or 1929 no use whatsoever has been made of said spur, and that on or about the 14th day of December, 1931, for a valuable consideration, the said Chas. M. Schoenfeld conveyed said sixty acres of land described in plaintiff's first amended original petition to his wife, plaintiff herein, Nellie Gillett Schoenfeld, who then and there became the owner of said real estate, and has at all times since said date and is now the owner of and in actual physical possession of said real estate.

"14. That after the plaintiff herein obtained title and possession of said sixty

acres of land in 1931, she erected or caused to be erected across the cattle guard situated or located where said spur track entered the sixty acres of land herein described in plaintiff's first amended original petition a wire fence, supported by an iron post located in the middle of said cattle guard.

"15. That on or about the 14th day of September, 1936, the defendant herein, Texas and New Orleans Railroad Company, acting by and through its servants, agents and employees, without the knowledge or consent of plaintiff and without authority from plaintiff, entered upon said sixty acres of land through said cattle guard, by removing the fence across said cattle guard, and commenced the removal of said spur track and continued to remove said spur track until on or about September 17, 1936, at which time the defendant, Texas and New Orleans Railroad Company, had, without the knowledge, consent or authority of plaintiff, completely removed from said sixty acres of land said spur track of approximately 838 feet, from its Western terminus, the switch point on the Kerrville division of the San Antonio and Aransas Pass Railroad Company, to the Eastern terminus thereof, and that of said 838 feet of track, approximately 213 feet of same was upon the right of way of the defendant herein and the remaining 625 feet was upon the sixty acres of land described in plaintiff's first amended original petition.

"16. That the reasonable cost of replacing said spur track on plaintiff's land, as of the time it was removed therefrom, and of restoring said spur track to the same condition as it existed in at the time of its removal by defendant would be $3.525 per lineal foot of track.

"17. I further find that the said Chas. M. Schoenfeld owned no railroad cars or locomotives except some narrow guage equipment that would not be susceptible of use on the spur track involved in this controversy, and that the cars and locomotives operated over said spur track were operated by the defendant, Texas and New Orleans Railroad Company, at the express direction and instruction and at the request of the said Chas. M. Schoenfeld, and that such operation was a necessary part of the said Schoenfeld's business of extracting from said sixty acres stone and crushed rock.

"18. I further find as a fact that a section of said spur track involved herein was originally constructed in 1907 by the San Antonio and Aransas Pass Railway Company and that said company constructed an addition of sixty feet to said spur track in 1908 and that in 1914 a second extension of ninety feet was added to said track by the San Antonio and Aransas Pass Railway Company, and that no extensions or additions were made to said spur track until those made by the said Chas. M. Schoenfeld in 1921 and 1922, but I am unable to tell from the evidence or record who paid for the spur tracks constructed in 1907, 1908 and 1914.

"19. I further find as a fact that the reasonable market value of the real estate described in plaintiff's first amended original petition, as of September, 1936, with a spur track thereon, of the kind that was upon said real estate, at the time the spur track here in controversy was removed, was $100.00 per acre, and that the reasonable value of said real estate at said time without the spur thereon was $10.00 per acre.

"20. That at or about the time of the execution of the contract of November 19, 1924, between the said Chas. M. Schoenfeld and the San Antonio and Aransas Pass Railway Company, the said Chas. M. Schoenfeld told Mr. Walter Springall, an employee of the said San Antonio and Aransas Pass Railway Company, that said spur track involved in this controversy was the property of the said Chas. M. Schoenfeld and that the said Chas. M. Schoenfeld claimed to be the owner of all of said spur track; and that the said Chas. M. Schoenfeld openly claimed said spur track and made such claim known to the agents of the railroad company, and that such claim dated from 1924 continuously for a period of more than four years. That his claim, possession, user and ownership were never disputed by defendant until the removal of said spur in 1936."

The trial judge from the above findings of fact made and filed the following conclusions of law:

"1. That said spur track involved in this controversy was not at any time and never became a permanent fixture and a part of the realty and that therefore the said Chas. M. Schoenfeld did not acquire title to said spur upon the purchase of said real estate in 1919, and that therefore the

plaintiff herein did not acquire title to said spur upon her purchase from the said Chas. M. Schoenfeld in 1931.

"2. I further conclude as a matter of law that notwithstanding the repairs and replacements and the extensions of and to said spur track made by the said Chas. M. Schoenfeld from 1919 to 1925 that the said Chas. M. Schoenfeld did not acquire title thereto by virtue of having made said repairs, replacements and rehabilitations.

"3. I further conclude as a matter of law that prior to the 14th day of December, 1931, when the plaintiff herein acquired title to said sixty acres from the said Chas. M. Schoenfeld, that the said Chas. M. Schoenfeld was then and had been in peaceable, open, adverse possession of and using and enjoying and claiming title to said spur track for more than four years prior to the 14th day of December, 1931, the date upon which he conveyed said sixty acres of land to the plaintiff herein, and that by virtue of said peaceable, open, adverse possession and use and enjoyment and his claim of title thereto the said Chas. M. Schoenfeld had, prior to the 14th day of December, 1931, acquired title to said spur track by limitation and adverse possession, and that on the said 14th day of December, 1931, the said Chas. M. Schoenfeld had prior thereto acquired title to said spur track and was then the owner of said spur track and that on said date when he conveyed the sixty acres of land described in plaintiff's first amended original petition to the plaintiff herein he conveyed, along with said land and the title thereto, the spur track herein involved, and conveyed good title to the real estate and 625 feet of said spur which was located and situated upon said sixty acres of land, and that from and after said time the plaintiff herein, Nellie Gillett Schoenfeld, was the owner and holder of said 625 feet of said spur track located and situated on said sixty acres of land.

"4. I further conclude as a matter of law that the removal of said 625 feet of spur track from the real estate herein described in plaintiff's first amended original petition was unauthorized, unwarranted and wrongful upon the part of the defendant, and that the defendant is liable to the plaintiff herein for the reasonable value of replacing said 625 feet of spur track as it existed on the 18th day of September, 1936, which reasonable value I conclude to be $3.525 per lineal foot of trackage,

making the defendant liable to the plaintiff in the amount of $2,203.12, with interest at six per cent per annum from the 18th day of September, 1936, for which judgment should be rendered."

We are of the opinion that the trial judge erroneously concluded that the spur track involved in this controversy was not at any time and never became a permanent fixture and a part of the realty. The trial judge found from the evidence, and such findings are not here questioned: That in the year 1919 when Chas. M. Schoenfeld went into possession of the land described in appellees' petition, the railway spur in controversy was firmly affixed to the soil, the ties being imbedded in the soil and in some places covered by the soil; that the spur was adapted to the use for which it was intended and susceptible of being used for the purpose for which the real estate was purchased and intended; that appellant Railway Company or its predecessor had never claimed any right, title or interest in said railway spur until September, 1936, at which time appellant took up and destroyed the spur track; and that Schoenfeld had built about 200 feet of said spur at his own expense after coming into possession of the land. Further, the appellant had acknowledged Schoenfeld's control over the spur by requiring him to repair it and also requiring his written consent before appellant would spot two cars of seed upon the spur for the convenience of some neighbors of Schoenfeld. Under these and other facts found by the trial judge the spur track became a fixture and passed with the title to the real estate.

We are aware of a line of cases holding that the superstructure of a railway company when placed upon the land of another without his consent does not become a part of the realty. This is particularly true of the main lines of railway companies. Preston v. Sabine & East Tex. Ry. Co., 70 Tex. 375, 7 S.W. 825. The main reasons given are that the use of the railroad track and the land on which it is placed is generally quite different. The railroad company never acquires the fee simple title but only an easement over the land. It has the right of eminent domain and may take such land as is necessary to the performance of its duty to serve the public generally. Other cases so holding are: Farrar v. Nashville, C. & St. L. Ry. Co., 162 Tenn. 313, 36 S.W.2d

95; Palmer v. Delaware, L. & W. R. Co., 277 Pa. 1, 120 A. 668.

■ In the case at bar we have a very different state of facts from those in the above cited cases. Here the track is not shown to have ever belonged to the railroad company. The trial judge found that though much of this track had been built for many years the railroad company had never claimed it until the time the company entered upon the land and removed the track. The track was adapted to the same use as the freehold. It had been repaired and maintained by the owner of the fee. It was not a temporary structure that could be easily removed, but the ties were imbedded in the soil and in many places covered by the soil. Here we have a private switch for private use, and the railroad company would not have the right of eminent domain.

In the case of Texas & P. Ry. Co. v. Hays, 3 Willson Civ.Cas.Ct.App. § 56, pp. 79–84, it is pointed out, in effect, that the reason the track was not held to be a fixture in that case was that the structures of the company were dedicated, not to the use and enjoyment of the freehold, but to public uses. In the case at bar this distinguishing feature does not exist.

■ The case of Helena & Livingston Smelting & Refining Co. v. Northern Pacific Railway Co., 62 Mont. 281, 205 P. 224, 230, 21 A.L.R. 1080 is directly in point and states the proposition well in the following language: "Yet when, as here, such tracks are installed upon the property of another solely for the purpose of serving the private enterprise of the owner in order to increase its revenues from that source, and are installed and maintained at the expense of the owner of the enterprise, and cannot be used for any other purpose, it cannot be said as a matter of law that the right of the company rests prima facie upon any other rule than that by which is determined the question: What are and what are not fixtures?"

Applying here the general rule as to what are and what are not fixtures to the findings of facts made by the trial judge, it must be concluded as a matter of law that the spur track involved herein was a fixture and a part of the land owned and held by appellee, Mrs. Schoenfeld.

■ Appellant contends that in any event it was entitled under the provisions of the contract of November 19, 1924, to remove 187.1 feet of the track, for which recovery was allowed. We overrule this contention. The findings of facts made by the trial judge and supported by the evidence preclude the idea that any of the track for which recovery was allowed was covered or in any way governed by the provisions of the contract of November 19, 1924.

■ We are likewise of the opinion that the evidence with reference to the cost of replacing the spur track was properly admitted and was sufficient to support the trial judge's finding on this point. We are also of the opinion that the cost of replacing the spur track was the proper measure of damages and is the only measure which would properly and fully compensate appellee for the damages caused her by the wrongful removal of the spur.

■ Appellant contends that the trial court erred in admitting evidence with reference to alleged conversations between Schoenfeld and certain agents of the railroad company. As this was a trial before the court without the intervention of a jury and the trial judge is presumed not to have taken into consideration any evidence not proper, we do not deem it necessary to pass upon these contentions. There is ample evidence to sustain the trial judge's findings of fact without considering the evidence challenged by appellant.

The trial judge concluded as a matter of law that Schoenfeld acquired title to the spur track by virtue of the statutes of limitation. This conclusion of law is challenged by appellant. The conclusions we have already reached render this matter immaterial.

The judgment is affirmed.

### On Motion for Rehearing.

■ Appellant calls to our attention that the right of eminent domain is available to railway companies for the purpose of securing right of ways for spurs and side tracks as well as for the purpose of securing right of ways for main lines. This is undoubtedly true where the spur or side track is for public use, but is to the contrary where the spur or side track is for private use, as is the circumstance in the case at bar.

We adhere to our original holding that under the facts existing in this case the

right of eminent domain would not be available to appellant.

We have carefully considered appellant's motion for a rehearing and same is overruled.