Northern Central Railway Co. *vs.* Canton Co. of Baltimore.

*Order reversed and*

*procedendo awarded.*

(Decided 12th March, 1869.)

# THE NORTHERN CENTRAL RAILWAY COMPANY *vs.* THE CANTON COMPANY OF BALTIMORE.

*Trade fixtures—The road-bed of a Railway and the Rails fastened to it, may be Trade fixtures—Right of Tenant to remove Fixtures.*

Trade fixtures and buildings for trade, no matter how strongly attached to the soil or firmly embedded in it, are treated as personal property, and as such subject to removal by the person erecting them.

Northern Central Railway Co. *vs.* Canton Co. of Baltimore.

The road-bed of a railway, the rails fastened to it, and the buildings at the depots, are real property; but under certain circumstances they may be trade fixtures, and be treated as personal property.

The ground upon which a tenant's right to remove his fixtures has been limited to the continuance of his term, rests upon the doctrine, that if he neglected to avail himself of his right within this period, the law presumed that he voluntarily relinquished his claim in favor of the landlord. This presumption cannot arise where the term, being uncertain in its continuance, may be terminated suddenly, and without previous notice.

APPEAL from the Circuit Court for Baltimore County.

This was an action of *Replevin* instituted by the appellant, to recover from the possession of the appellee, a lot of iron rails, frogs, spikes and bolts, claimed to be the property of the former, in the possession of, or being upon the property of the latter. The writ was issued October 27th, 1865, and the property replevied and delivered to the appellant on the 31st day of the same month.

The case was submitted to the Court below for its determination, without the aid of a jury on an agreed statement of facts, which will be found sufficiently stated in the opinion of this Court. The Circuit Court (EMORY, J.,) having given judgment for the defendant, the plaintiff prosecuted this appeal, in pursuance of the right reserved when the case was submitted to the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Bernard Carter* and *Wm. Henry Norris,* for the appellant:

Wherever a structure of any kind, being the property of A, is by him erected or placed, at his cost, on the land of B under a license from B, under such circumstances as show that A did not intend such structure to cease to be his property, nor to become the property of B, and did not intend the same to lose its character of chattel or personal property,

then in all such cases the said structure, though affixed and attached to the soil, continues to be the property of A, to all intents and purposes, and subject to his control, and even liable to his debts, to the same extent as if it had never been placed on the land of B. *Wood vs. Hewett*, 8 *Ad. & Ell.*, *N. S.*, 914, (55 *E. C. L.*, 913;) *Raymond vs. White*, 7 *Cowen*, 319; 1 *Washburne on Real Prop.*, 402, 403; *Van Ness vs. Pacard*, 2 *Peters S. Ct.*, 143, 144; *Wells vs. Banister*, 4 *Mass.*, 514; *Dame vs. Dame*, 38 *N. H.*, 429; *Barnes vs. Barnes*, 6 *Verm.*, 388; *Holmes vs. Tremper*, 20 *Johns.*, 32.

When the license has been revoked, and possession resumed by the land owner, the person whose property still remains on the land, may enter thereon to take or remove the property which he originally placed there by the license of the owner of the land, and maintain trespass against such land owner if his right be denied. *Nettleton vs. Sikes*, 8 *Metcalf*, 34; *Wood vs. Manley*, 11 *Ad. & Ellis*, 34; *Doty vs. Gorham*, 5 *Pickering*, 489; *Pierrepont vs. Barnard*, 2 *Selden*, 279; *Elwes vs. Mawe*, 2 *Smith's L. Cases*, 220, 221, (*4th edition;*) *Prince vs. Case*, 10 *Conn.*, 383;

Nor indeed, according to the law of this State can the land owner compel the removal of structures erected by his license until he has tendered a reasonable amount to reimburse the person thus erecting them. *Addison vs. Hack*, 2 *Gill*, 221; *Carter and Lewis vs. Harlan, et al.*, 6 *Md. Rep.*, 20.

The right of the appellant to the iron rails and other things taken under the replevin is clear, when the fact is established that they were placed on the land of the appellee with its license; even without the necessity of maintaining that such permanent structures as houses, barns, &c., can be removed by the licensee, because, in the very nature of a railway track, the temporary character of a set of rails forming it is seen; these rails are constantly and necessarily after use for a short number of years, taken up and replaced by others; in no sense, therefore, can a railway be said to be a *fixture*, and least of all, could the iron rails be said to be fixtures as they were

not in any way fastened to the ground, but only to the sleepers, which themselves were only kept down by the stone ballast. *Elwes vs. Mawe*, 2 *Smith's Lead. Cases*, 220, 221, (*4th edition*,) and 288, *last edition; Curtiss vs. Hoyt*, 19 *Conn.*, 164; *White's Appeal*, 10 *Penn.*, 253. In *West vs. Flanigan*, 4 *Md.*, it was conceded by West, on whose land a railway had been erected by Flanigan, his tenant, that on the termination of his tenancy, he had the right to remove the railway.

*Frederick W. Brune*, for the appellee:

" The road-bed of a railway, the rails fastened to it, and the buildings at the depots are clearly real property." " The rolling stock of a railway company, such as locomotives, engines, passenger, baggage and freight cars, hand cars, snow plows, &c., are to be deemed fixtures, and will pass under a mortgage of the track or railway." *Farmers' Loan and Trust Co. vs. Hendrickson*, 25 *Barbour*, 484, 488; *State vs. N. C. R. W.*, 18 *Md.*, 193, 218; *Strickland vs. Parker*, 54 *Maine*, 263–267; *Minnesota Co. vs. St. Paul Co.*, 2 *Wallace*, 609.

There is nothing to show that this iron was originally affixed to the soil, with the understanding or intent that it should continue to be regarded as personal property.

In Maryland, " the question is whether the thing claimed to be a fixture, is so attached as to become parcel of the freehold; and this is a question of *fact*, depending on the mode of annexation to the soil, or fabric of the house, and the extent to which it is united to them," and is not a question of intent at all. *McKim & Kennedy vs. Mason*, 3 *Md. Ch. Dec.*, 186; *Kirwan vs. Latour*, 1. *H. & J.*, 289; *Coombs vs. Jordan*, 3 *Bland*, 284.

Even if the railway company could have been regarded as a " tenant" of the Canton company, (which the Court of Appeals has expressly decided that it could not be, even by a Court of equity, 21 *Md.*, 395, 399,) and these iron rails as " trade fixtures"—(which they were not)—the " term " of the

" tenant," if it ever had any existence, *ended with the judgment in ejectment;* and it is well settled that trade fixtures and other personal property " are only considered as chattels in favor of the tenant and his creditors during the term; for, after that time, if left upon the land, they become parcel of the inheritance." *Coombs vs. Jordan,* 3 *Bland,* 284, 312; *Ruffey vs. Henderson,* 8 *Eng. Law and Eq.,* 305; *Davis vs. Moss,* 38 *Penn.,* 346; *Kutter vs. Smith,* 2 *Wallace,* 491; *Williams on Personal Property,* 14, *marg.;* 2 *Smith's Leading Cases,* 261, *top; Amos & Ferrard on Fixtures,* 71 *to* 79.; *Smith's Landlord and Tenant,* 348, 349, (*n.;*) *Heap vs. Barton,* 12 *C. B.,* 274; *Merritt vs. Judd,* 14 *Cal.,* 59; *Weeton vs. Woodcock,* 7 *M. & W.,* 14.

BRENT, J., delivered the opinion of the Court.

It appears from the facts in this case, that the Northern Central Railway Company, after the year 1855, and before 1859, constructed, at its sole cost and charge, a railway track upon the lands of the Canton Company, with the license and permission of the latter. The route adopted was agreed upon between them, and at the time of the construction of the road, the appellant had reason to believe it was laying its railroad upon land over which it had the free right of way. Whatever may have been the misunderstanding, as subsequently developed, between the companies, it was then believed by both of them that arrangements could be effected by which a continuous road, resulting in their mutual benefit, would be constructed from some point, in or near Baltimore city, on the main stem of the appellant's road to navigable water. Its construction, however, was prevented by circumstances, which it is unnecessary for the purposes of this case to notice in detail. The appellee, satisfied that the connection would not be made, thought proper in 1859 to revoke the license under which the appellant was in possession of its land. This was followed in 1860 by two suits; one an action of ejectment, and the other of trespass *quare clausum fregit.* During

the pendency of these suits, which had been referred by agreement to an arbitrator, the appellant filed a bill for specific performance, and also praying for an injunction. The appellee was successful in having the bill dismissed, and recovered judgment in both actions at law. A subsequent action of ejectment was brought in January, 1865, for the road-bed, which had not been embraced in the previous ejectment suit. A judgment therein was obtained in June following, and under a writ of *habere facias possessionem*, possession was delivered to the appellee in October of the same year. The rails and other materials, which formed a part of the railway constructed by the appellant under the circumstances above stated, were upon the land at the time, and the question arises who is the rightful owner of them?

The fact that they had been taken up and severed from the soil shortly before the execution of the writ of possession is immaterial. If the appellant had no title to them while attached as a railway to the soil, the severance did not confer any.

The general rule of the common law certainly is, that whatever is fixed and annexed to the soil becomes a part of it, and cannot be removed except by him who is entitled to the inheritance. But this rule is by no means inflexible and without exception. Trade fixtures have been held by the earliest cases in which the question arose, to form an exception. No matter how strongly attached to the soil or firmly imbedded in it, they are treated as personal property, and as such subject to removal by the person erecting them. In the leading case of *Elwes vs. Mawe*, 3 *East*, 38, (2 *Smith's L. C.*, 251,) the earlier and more important decisions upon this subject are very fully reviewed by LORD ELLENBOROUGH, and his conclusion from them, that trade fixtures and buildings for trade have always been recognized as an allowed exception to the general rule, has been acquiesced in, without an exception, as correctly stating the law. The distinction which he makes against fixtures for agricultural purposes has been doubted,

and regarded as too nice and technical, but there is no case in which the exception has not been held to apply to trade fixtures. In *Van Ness vs. Pacard*, 2 *Peters*, 37, the exception is recognized by the Supreme Court of the United States, STORY, J., delivering the opinion, and the doctrine applied to a house, which had been erected as an accessory to the business of a dairyman, although it was occupied as the residence of his family and those employed by him. It is also recognized and asserted in *Holmes vs. Tremper*, 20 *John. Rep.*, 29; *White's Appeal*, 10 *Barr.*, 252, and authorities there cited.

Another exception to the general rule is, that of structures upon the land of another, which have been erected by the builder at his own cost and for his own exclusive use, as disconnected with the use of the land. If so erected with the knowledge and assent of the owner of the land, the title remains in the builder; and the property is held by him as a personal chattel. Thus it is not so much the character of the structure as the circumstances under which it was erected, that will determine whether it passes with the realty, or is to be treated as personal property. In the notes to the cases of *Prince vs. Case* and *Rerick vs. Kern*, 2 *Amer. L. C.*, 747, it is correctly said, the American Courts have repeatedly held that a house or other building will not be merged in the land on which it stands in consequence of the solidity of its structure or the connection between it and its foundations, if the agreement of the parties and the purposes of justice require, that the title to both should be kept separate, and that the owner of the house should have the right to enter for the purpose of using it as his own, or removing it." In the case of *Dame vs. Dame*, 38 *N. H.*, 429, this doctrine was applied to a house erected upon the land of another, and it was held to be but a personal chattel. It is also established by *Curtiss vs. Hoyt*, 19 *Conn.*, 165; *Wells vs. Banister*, 4 *Mass.*, 514; *Barnes vs. Barnes*, 6 *Vermont*, 388; *Pemberton vs. King*, 2 *Devereux*, 376, and being personalty, it is governed by the same rules as any other personal property left by the consent of the

owner of the land upon his premises. *Smith vs. Benson*, 1 *Hill*, 176.

We consider the property in dispute in this case, as coming within both of these exceptions. The railway, of which it formed an important and necessary part, cannot rationally be supposed to have been designed for any other purpose, than that of trade connected with the ordinary business and pursuits of a railway company. It certainly was not accessory to the enjoyment of the freehold, or in any manner necessary and convenient for the occupation of the land by the party entitled to the inheritance. Had it been voluntarily abandoned, it is not pretended that it would or could have been used by the appellee as a railway. The conclusion cannot be avoided that it was built by the appellant with a view and for the purpose of facilitating and increasing the business and trade, in which the corporators, under their corporate powers, had embarked as carriers. A railway is certainly quite as essential to the trade and business of a railway company, as a steam engine and the house which may cover it, or any other fixture can be to the miller or the miner. We do not mean to be understood as denying the doctrine laid down in the *Farmers' Loan and Trust Co. vs. Hendrickson*, 25 *Barbour*, 484, and cited with approval in 18 *Md.*, 193, that the road bed of a railway, the rails fastened to it, and the buildings at the depots are real property. *Prima facie*, a house with its foundation planted in the soil is real property, yet when it is accessory to trade, and in law a trade fixture, we find all the authorities regard it as personal property. The same doctrine is applicable to the railway in question. As a general rule, it would be regarded as real property, but under the circumstances of this case, coming as it does within the definition of a trade fixture, it becomes personalty, liable to the same rules of law that govern any other personal property.

All the surrounding circumstances shew that at the time this railway was laid upon the land of the appellee, it was not intended that it should be merged in the freehold. It was

built at the sole cost of the appellant, with its money and labor, under the reasonable belief that it had a free right of way, and under the license and by the permission of the owner of the soil. It is true this license was not of such a character as made it irrevocable, or gave the appellant any sufficient standing in a Court of equity, to obtain a decree for a specific performance, yet it was a license justifying an entry, and whatever was done under it, before its revocation, is to be regarded as legal, and not as the act of a trespasser. The road thus laid must have been intended by both parties for the exclusive use of the railway company, and that use could not have been fully enjoyed without the right to hold and control it. The appellant could not otherwise have directed its management, and taken up and replaced such rails or other materials as were necessary in its judgment for the repairs and proper condition of the road.

The strict rule which has been applied to tenants, requiring them to remove fixtures, which they hold as personal property during the term, even if it were adopted by this Court, does not apply to the present case. The ground upon which a tenant's right to remove his fixtures, has been limited during the continuance of his term, rests upon the doctrine that if he neglected to avail himself of his right within this period, the law presumed that he voluntarily relinquished his claim in favor of the landlord. This presumption cannot arise where the term being uncertain in its continuance, may be terminated suddenly and without previous notice. To apply it to a party in possession under a license revocable at pleasure, would be manifestly unjust and without reason. It would be allowing a party, without any fault of his own, or any opportunity of removal, to be deprived of his property at the mere will and caprice of another.

If the property replevied did not belong to the appellee at the time the license to the appellant to be upon its land was revoked, it is not perceived how the subsequent suits between them could have changed the title to it. This property was

not the subject of those suits. They had reference to the land only upon which it was, and determined no question of its ownership, inasmuch as it does not pass with the realty from the single circumstance of having been affixed to the soil.

Upon a careful review of the law and facts in this case, we cannot agree with the Court below. We think the property in question belonged to the appellant, and that the judgment below should be reversed.

> *Judgment reversed, and judgment for the*
> *appellant for the property replevied,* .
> *and one cent damages and costs.*

(Decided 12th March, 1869.)