White, C. J.
The determination of this case depends on the answer to be given to two questions:
1. Whether the stone piers built by the railroad c ompany on the premises over which it was authorized to construct its road, were so anuexed to the land as to become the property of the owner of the laud.
*577 2. If there was not such annexation as to vest in the owner of the lands the right of property in the piers,, whether the right of the railroad company to remove the-same was barred by the statute of limitations.
In considering the first question, we do not propose to-enter into a general discussion of the law of fixtures, nor into an examination of the numerous cases illustrating its-application in particular instances.
In order to determine, in a given case, whether a chattel, by annexation, has been incorporated into the realty so as to-become part of it, the purpose for which the annexation was made must be considered, as well as the relation of the-parties concerned to the property, both before and after the-annexation.
An article annexed to lauds may, for some purposes, and as between certain parties, be regarded as part of the realty,, while, as respects other parties and objects, the same thing may be considered as retaining its character as personalty.
In the present case, the question is not as to whether the-piers are to be regarded as realty or personalty between the-railroad company and strangers, but it is as to how they are to be treated in this respect between the company and the-land-owner who gave the eompauy the right to place them on the lands as part of its railroad.
That the mode of annexation alone will not determinetiie character of the property annexed, is apparent from the fact that property may be annexed by the same mode, and yet be personalty in the one case and realty in the other. Trees growing in a nursery are annexed to the soil in the same way as trees growing in an orchard; but, in the former case, they are cultivated for the purposes of trade, and are regarded as personalty, while in the latter, being intended as a permanent accession to the lands, they are regarded as belonging to the realty. The general principle to be kept in view, which underlies all questions of this kind, is the distinction between, the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles. *578 that are merely accessory to the bnsines-s, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business, which may be of a temporary duration, become subservient to the realty, and acquire and retain its legal character. As, however, the combined use of both the real and personal property is necessary for the business, the difficulty, in any given case, consists in determining on which side of the dividing line to assign the particular article in question. This must, in a great degree, be determined by the circumstances of each particular case. Fortman v. Goepper et al., 14 Ohio St. 567.
Such is the general rule, as laid down in the case cited, to guide in determining controversies of this character. The application of it to the facts of the present case affords .a satisfactory solution of the question at issue.
The use of the strip of laud on which the piers were ■built was grauted to the railroad company for the purpose ■of constructing part of a continuous line of railroad which it was authorized to build and operate. The piers were as much a part of the road as the bridges they were designed ■to support, or the rails and ties on the road. The use the road was intended to subserve, and to which alone it was adapted, was the transportation of persons and property. 'The road and all its parts were merely accessory to this ¡business, and were put on the land for this purpose, and not .as accessions to the land over which the road was to pass. The part of the road built on the premises of the plaintiff in error, disconnected from the other parts of the road, ■could not be operated, and would be useless as a railroad. Nor could it serve any useful purpose as an appurtenance to the laud on which it was built.
It is possible that, in some instances, by changing the «character of the structure and diverting it to other purposes *579 than those for which it was designed, it might afford some incidental benefit to the lands; but, generally, the value of the structure would consist in what it would be worth disconnected from the land and as personal property. Such, at least, appears to be the character of the structures now in question.
If the piers were the property of the land-owner, they became his as they were built, the company only retaining the right to use them in operating its road.
We do not understand such to be the effect of the agreement of the parties. The railroad company acquired an easement in the land to construct and use its road thereon. It did not bind itself to the land-owner, either to build or maintain the road; and it could change the character of the structure at pleasure. Nor do we perceive any good reason why, in the act of building, it should lose its right ■of property in the structure when built, or in the materials of which it was composed. The land-owner retained his laud subject to the easement, and the company owned the easement and the structures it was designed to support.
We attach no importance to the fact that the company, at the time of the attempted removal of the stone, had abandoned the idea of completing the road. If the piers ■had not before that time become the property of the landowner, the abandonment of the enterprise would not make them his. The right to abandon the purpose of completing the road, it seems to us, carries with it the right to remove the structures put on the land solely as a part, of the road equally as the right to construct and use the road, carries with it the right to change, remove, and renew the materials of which it is composed.
The following cases, we think, fully sustain our ruling upon this question: Corwin v. Cowan, 12 Ohio St. 629; Northern Central R. W. Co. v. Canton Co., 30 Md. 347.
2. The remaining question is, whether the right of the railroad company to remove the piers was barred by the statute of limitations.
It is not claimed that more than four years had elapsed *580 after the defendant resisted by force the attempt of the-company to remove the piers before the commencement of' the suit. It is this act of the defendant upon which the company relies as constituting the conversion for which the suit- was brought.
The ground, as we understand, upon which it is sought to apply the statute of limitations is that the defendant, below had for about ten years been in possession of the strip-of land over which the company had the right to construct,, and had partly constructed its road, including the piers iu question. That this, in connection with the fact that the-company had abandoned the design of completing the road,, put the statute in operation, both in respect to the right of the company to remove the piers and to resume possession of the land.
But the operation of the statute is in no way affected by the purposes and intention of the company. To the extent-that it operates at all, the statute operates irrespective of’ the acts and designs of the railroad company, and is in no.respect aided by such acts or designs. It is the adverse possession of the defendant which sets the statute in operation ; and “to make such possession adverse, there must have been an intention on the part of the person in possession to claim title, so manifested by his declarations or his' acts, that a failure of the owner to prosecute within the-limited time raises a presumption of an extinguishment or a surrender of his claim.”
The period limited that would bar the railroad company of its easement under the statute would be twenty-one-years. True' the instrument evidencing the grant to the company is defective as a conveyance in not being attested and acknowledged in conformity with the statute. But this-can make no difference in the case, for the rights of the-company under it are expressly recognized in the deeds of conveyance to the defendant-, executed by Norton, undei whom both parties claim, and the defendant is therebyestopped from questioning the validity of the gr-ant.
The rights the defendant acquired under the alleged *581 •abandonment are such, as he derived from the company bj its voluntary act, and are independent of the statute of limitations.
The abandonment referred to consists of the surrender by the company of certain of its rights to the acceptance of the defendant. It is not pretended that there was any express agreement between the parties in regard to such ¡surrender. The terms of the surrender are only such as can be implied from the fact that the company had given up or abandoned the design of finishing its road, and had .allowed the defendant to take possession of the land embraced in the right of way, and retain it for the time before .stated.
In regard to the effect of these facts, we agree with the -court below, that they do not imply a relinquishment on the part of the railroad company of its right to enter and remove the piers in question.
"We deem it unnecessary to notice the various charges in •detail. What has been said covers all that is in them that we regard as material.
The assignment of error on the ground that the verdict . is contrary to the evidence has'not been argued; and it is .sufficient to say, on this point, that from an examination of the evidence, we discover no ground to warrant our interfering with the action of the court below.

Judgment affirmed.