McNAIR *et al. v.* ROCHESTER, N. Y. & P. R. Co. *et al.*

(*Supreme Court, General Term, Fifth Department.*   April 16, 1891.)

**1.** EMINENT DOMAIN—ENTRY BY CONSENT—REMOVAL OF TRACK—DAMAGES.

A tenant for life of a farm, living thereon with his children, the remainder-men, who were all infants, having no general guardian, agreed with a railroad company for appraisement of damages for the construction of its railroad upon the land, and that it might enter for that purpose.   The company entered and took possession. Afterwards, no appraisal having been made, the father agreed in writing to convey to the railroad company a right of way across the land for railway purposes, for which the company agreed to pay a certain sum, having already paid part thereof. The company never took proceedings to acquire the right of way, and never paid any further damages for the occupation and use of the land; and defendant, succeeding to its property and franchises, removed the railway structures from the land, and abandoned the right of way, and the land remained in the possession of the tenant for life.   *Held,* that he and his children could not maintain an action against defendant for removing the railway structures on the ground that they had become part of the realty.

**2.** SAME—TRESPASS.

The first railway company was not a trespasser on the land, having entered with the consent of the life-tenant, and, so far as possible, with the consent of the infants, through their father as their guardian in socage.

Appeal from judgment on report of referee.

Action by Charles B. McNair and others against the Rochester, New York & Pennsylvania Railroad Company and another.   Plaintiffs appeal from a judgment for defendants entered on trial before a referee.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ

*James Wood,* for appellants.   *Frank S. Smith,* for respondents.

MACOMBER, J.   This action is brought to recover the sum of $820.95, the value of certain property consisting of rails, fastenings, materials, and structures placed on plaintiff's land for railroad purposes.   The plaintiff Charles B. McNair was at the time of the beginning of this action, and now is, the owner of a life-estate in the land upon which this property was located.   The other plaintiffs, who are his children, are the remainder-men, and entitled to the fee of such land at the death of their father.   The defendant corporation is the successor of a railroad company known as the Rochester, Nunda & Pennsylvania Railroad Campany, which was organized under the laws of the state of New York, to the property, rights, and franchises of which the present corporation defendant succeeded.   On the 3d day of June, 1872, the plaintiff Charles B. McNair entered into a stipulation in writing, by which it was agreed between him and the railroad company that certain persons should be named as commissioners to ascertain and appraise the damages to be paid by the company to the land-owners for the construction upon these lands of the structures of the railroad.   Pending the ascertainment of the damages, it was agreed that the railroad company might enter upon the lands for the purpose of constructing its railroad.   In accordance with this agreement the railroad actually entered upon and took possession of the lands under this writing. On the 20th day of June, 1872, Charles B. McNair served a notice upon the railroad to the effect that, inasmuch as the company had violated a part of the agreement by failing to ascertain the damages due to the land-owners, the company was forbidden from entering upon the premises, or from further prosecuting the construction of a railroad upon the plaintiffs' farm.   This notice, however, is of very little importance to the correct determination of this case, because on the 25th day of June, 1873, Charles B. McNair entered

into a contract in writing with the same company, whereby he agreed to convey to the railroad company a certain right of way across the land, to be used for railway purposes only. By this agreement the railroad company was to pay for the land the sum of $325, $200 of which had already been paid to Mr. McNair. The fact that Charles B. McNair at this time had a life-estate only was well known to all parties, and reference thereto was made in the agreement itself. The railroad company failed wholly to institute any proceedings to acquire the right of way, or to pay, further than it had already done, any damage to any of the plaintiffs for the occupation and use of the land for railroad purposes. Nevertheless the company continued in the possession of the right of way, and completed its structures, and placed on the lands of the plaintiffs rails, fastenings, material, and structure suitable for its purposes. Up to that time all the remainder-men were infants, having no general guardian. After the removal of the property by the present defendant corporation from the plaintiffs' lands the right of way across the lands described in the complaint was abandoned, and the lands have remained in the possession of Charles B. McNair.

This action cannot be maintained unless it be shown that the railroad company, the predecessor of the present defendant, was a trespasser; but the facts above disclosed, which are undisputed, show that the company cannot be regarded in any legal sense as a trespasser, for it had, at the inception of its occupation of the lands and throughout such occupation, with the exception of the protest of Charles B. McNair, above mentioned, the permission of the life-tenant. The authorization given by him to the company was not only in writing, but was given for a valuable consideration. Under the first agreement the occupation of the railroad company was clearly contemplated by the minds of both parties, and in fact the writing between the parties expressly provides in terms that the railroad company might enter upon the land for the purpose of constructing its railroad, and the other written agreement was made after the company had begun making its structures, and by its terms fully recognized the right of the company to continue the occupation for the purposes named. It is not even contended by the learned counsel for the appellants that Charles B. McNair could, by any act of his own, turn the occupation of the company, which was there given with his full knowledge and consent, into a trespass, so as to enable him to maintain an action; but it is contended with some earnestness by the counsel that the other plaintiffs are not bound by the acts of their father. It is contended that, as they were not parties to the original transaction, so they are not bound or affected by anything which the life-tenant did in his own or in their behalf. It is true that the children were at that time all infants having no general guardian, but they resided with their father, the life-tenant, upon this farm. Charles B. McNair was their guardian in socage, and he continued to represent such infants and their rights, so far as they could be represented by any guardian, certainly up to the time they were 14 years of age, and probably up to the time that an actual guardian had been appointed by a court or judge. By section 20 of 2 Rev. St. p. 153, Charles B. McNair was required to keep and sustain the houses, gardens, and other appurtenances to the lands of his wards from the issues and profits thereof, or with their moneys in his hands, as such guardian in socage. In the case of *Emerson* v. *Spicer*, 46 N. Y. 597, the general rule is stated to be that a guardian in socage may take the lands during the guardianship. The power of the parent, under these circumstances, to permit the occupation of the lands, was terminable only either upon the arrival of the infants at the age of 21 years, or by the appointment before that time of another guardian. *Emerson* v. *Spicer, supra,* 598. As was the case of *In re Norwood & M. R. Co.*, 47 Hun, 490, the entry on the land was with the consent of the appellant Charles B. McNair, and, so far as it was possible, it was also made with the consent of the infants. The structures being thus

erected lawfully, and with the consent of the parties interested in the lands as life-tenant and remainder-men, so far as the latter could speak by their guardian in socage it would seem to follow, necessarily and logically, that there can be no recovery for their removal upon the ground that they had become a part of the realty, for up to the time of removal the occupation of the company had not been illegal. The contention of the appellants cannot be sustained by any analogy derived from the law of landlord and tenant. No tenancy was agreed upon between the parties to the original contracts. The occupation was provisional, to be followed by an actual acquisition of the title to the lands for railway purposes. It was the duty of the railroad company to institute proceedings, and to carry them on, under the agreement by which the plaintiffs' title to the land was to be acquired. It failed to do so. The right of action, therefore, if any, which accrued to the plaintiffs arose out of the failure of the railroad company to keep its written engagement, and was for a breach of that contract. The plaintiffs did not have the power, at their option, to treat the company either as one who had failed to fulfill its agreement, or as a trespasser from the beginning of the occupation of the lands, for the reason that the relation of the parties was created by an agreement which continued until the removal of the structures. There being no provision in the contract that the structures so placed by the company on the lands should belong to the plaintiffs in case the company failed to institute and carry on condemnation proceedings, their removal by the defendants, under the facts stated, must be deemed lawful. The judgment appealed from should be affirmed. All concur.