# Richmond.

## TALLEY, ETC. v. DRUMHELLER, ETC.

### November 12, 1925.

1. STARE DECISIS—*Law of the Case—Case at Bar.*—When the instant case was formerly before the Supreme Court of Appeals (*Talley* v. *Drumheller*, 135 Va. 186, 115 S. E. 517) it was decided that a joint action of detinue could be maintained by plaintiffs in error, landowners, against the defendants in error, independent contractors and their employers, for removing "T" rails from the several tracts of land of the landowners   That decision became the law of the case, and the question was not open to debate on a second writ of error. But if the same question should again come before the court on a like state of facts, a majority of the court desire it to be considered open for further consideration.

2. FIXTURES—*Rails on Right of Way of Railroad—Trade Fixtures.*—Rails laid on the right of way of a railroad company, only as incident to the use of the right of way, and with no intention that they shall remain after the easement has terminated or been abandoned, are an exception to the general rule as to chattels annexed to realty, and retain their character of personalty although affixed to the soil. It is sometimes said that they are in the nature of trade fixtures, though the decisions, that they retain their character of personalty, are not always placed on that ground.

3. FIXTURES—*Rails on Right of Way of Railroad—Abandonment of Rails or Abandonment of Easement—Case at Bar.*—In the instant case, an action of detinue for the removal of rails which had been used over a tramroad on a right of way over plaintiffs' lands, there was much evidence tending to show an abandonment of the easement of way by defendant, but little, if any, tending to show an abandonment of the title to the rails. A long time elapsed between the actual use of the tramway and the taking up of the rails. There were a number of breaks in the line, and while this would be important in determining whether or not the easement had been abandoned, it was not important in regard to the abandonment of the rails in the absence of other evidence of abandonment and an assertion of title to the rails by the owners of the servient estates.   No act of ownership was exercised over the rails by the owners of the servient estates and no notice given to defendant to remove them.   On the other hand,

defendant had never evinced any intention to abandon the rails, and had constantly exercised dominion over them.

*Held:* That the presumption was that the rails remained on the land with the consent or acquiescence of the owners of the servient estates; that defendant had not abandoned the rails, and that title to them remained in him.

4. FIXTURES—*Rails on Right of Way of Railroad—Abandonment of Rails— Case at Bar.*—So long as no claim of title to rails on the right of way of a tramway over plaintiffs' lands was made by plaintiffs, the owners of the servient estates, no objection raised to their remaining on the right of way by plaintiffs, no notice given to defendant to remove them, and no act done by the plaintiffs which would bring home to the defendant notice that the plaintiffs intended to assert ownership over the rails, the defendant had the right to presume that the *status quo* of the rails remained unchanged, and was not bound to remove them within any specified time.

5. ABANDONMENT—*Personal Property—Statement of Doctrine.*—Abandonment of tangible personal property means that the owner thereof voluntarily relinquishes possession thereof with the intention of terminating his ownership and with no intention of vesting title in another. When such property has been so abandoned, the first person who takes possession thereof for the purpose of ownership, generally and in the absence of special circumstances, acquires title thereto.

6. ABANDONMENT—*Personal Property—Lapse of Time.*—Mere lapse of time and non-user, unaccompanied by other evidence of intention, are generally not sufficient to constitute an abandonment.

7. APPEAL AND ERROR—*Error in Instructions—Where no Other Verdict could have been Found—Case at Bar.*—Some of the instructions.in the instant case given for the defendant were erroneous, still, looking to the whole evidence in the case, no other verdict than the one found for defendant could have been properly found by the jury, even under proper instructions.

*Held:* That the verdict could not be set aside for error in the instructions.

Error to a judgment of the Circuit Court of Amherst county, in an action of detinue.    Judgment for defendant.    Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*James R. Caskie* and *Evans & Evans*, for the plaintiffs
in error.

*Geo. E. Haw* and *Edward Meeks*, for the defendants
in error.

BURKS, J., delivered the opinion of the court.

This was an action of detinue to recover certain
steel tramrails, in which there was a judgment for
the defendants.

[1] When this case was formerly before this court,
it was decided that a joint action of detinue could be
maintained by plaintiffs in error against the defend-
ants in error. *Talley* v. *Drumheller*, 135 Va. 186, 115
S. E. 517. That decision became the law of the case,
and the question is not now open to debate on a second
writ of error. *Norfolk & W. R. Co.* v. *Duke*, 107 Va.
764, 60 S. E. 96; *Steinman* v. *Clinchfield Coal Corp.*,
121 Va. 611, 92 S. E. 684. But if the same question
should again come before the court on a like state of
facts, a majority of the court desire it to be considered
open for further consideration.

By deeds bearing date September 4, 1867, and
October 23, 1867, the defendants and those under
whom they claim acquired title to a tract of land con-
taining 800 acres, called "Wheatland," and a right of
way therefrom to the James River and Kanawha canal
over land subsequently acquired in different tracts by
the plaintiffs, respectively, in severalty, except the
plaintiff, W. E. Harvey, who acquired title from a
different source. All of the plaintiffs except Harvey
claim under a common source with the defendants,

to wit, deeds from J. J. Dillard. Harvey acquired title in 1912 from the Watts heirs, who had acquired title from Alex. Munday. The tram road hereinafter mentioned passed over the Watts land for a distance of 289 feet. The Wheatland tract contained iron ore, and the object of the deeds of 1867 was to acquire this ore and to transport it to the canal. Soon after obtaining these deeds, the predecessors in title of the defendants began mining the ore and built a tramroad from Wheatland to the canal, over which the ore was transported. Upon this tramroad steel rails were laid and the road was operated until 1891 or 1892, probably the latter date. By what authority the tramroad was laid on the Harvey tract does not clearly appear from the record, though it is stated in a bill in chancery copied in the record, to which Harvey was not a party, that the land or right of way was obtained from Charles Watts' children who were predecessors in title of Harvey. At all events, the record does not disclose that the right of way over the Harvey tract was ever called in question until the present litigation arose in 1918 when it was called in question by Harvey.

John T. Jones, whose executrix is the principal defendant in the instant case, acquired title to Wheatland and the tram road by deed dated October 1, 1904, from Nathaniel Thayer, surviving trustee, Jones having become the purchaser thereof at a foreclosure sale made by said trustee. In 1918, Jones took up and removed the steel rails from the tramroad, and the instant action was brought to recover said rails or their alternate value.

The plaintiffs based their claim to recover on the ground that Jones and those under whom he claimed had abandoned the right of way for the tramroad, and that upon such abandonment the rails reverted to the

owners of the servient estates.    Much evidence was taken on the subject.

Three errors are assigned:   (1) Granting instructions for the defendants, (2) refusing instructions tendered by the plaintiffs, and (3) refusal to set aside the verdict as contrary to the law and the evidence.   It will be unnecessary to consider the instructions seriatim for reasons hereinafter made to appear.

The trial in the lower court proceeded upon wrong principles, leading to errors in the instructions which furnished the chief topics of discussion before this court.  The initial error and the one which led to others consequent thereon, was in instructing the jury that the rails of the tramroad, by reason of their attachment to the right of way, were "real estate and not personal property."

[2] Rails laid on the right of way of a railroad company, only as incident to the use of the right of way, and with no intention that they shall remain after the easement has terminated or been abandoned, are an exception to the general rule as to chattels annexed to realty, and retain their character of personalty although affixed to the soil.   It is sometimes said that they are in the nature of trade fixtures, though the cases are not always placed on that ground.

In *Wiggins Ferry Co.* v. *O. & M. R. Co.*, 142 U. S. 396, 415, 12 S. Ct. 188, 194, 35 L. Ed. 1055, it is said: "We agree with the court below that the petitioner is not entitled to recover the value of the rails removed by the receiver from the premises on Bloody Island. They were laid there under a mere easement granted by the petitioner, and obviously with no intention that they should become a part of the realty.   As between the landlord and tenant, or one in temporary possession of lands under any agreement whatever for

the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for the purposes connected with such temporary possession. * * * In Van Ness v. Pacard, 2 Peters 137 [7 L. Ed. 374], it was held that a house built by a tenant upon land, primarily for the purpose of a dairy, and incidentally for a dwelling house for the family, did not pass with the land. The earlier authorities are reviewed in that case by Mr. Justice Story, an d the conclusion reached that whatever is affixed to the land by the lessee for the purposes of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term. In the case of Wagner v. Cleveland & Toledo Ry., 22 Ohio St. 563, 10 Am. Rep. 770, it was held that stone piers built by a railroad company as part of its road, on land over which it had acquired the right of way, did not, though firmly imbedded in the earth, become the property of the owner of the land, as part of the realty; and that, upon the abandonment of the road, the company might remove such structures as personal property. So, in Northern Central Railroad v. Canton Co., 30 Md. 347, it was held that the rails fastened to the roadbed of a railroad, as well as the depots and other buildings, might, under certain circumstances, be treated as trade fixtures and removable by the company, if the surrounding circumstances showed that at the time the rails were laid upon the land it was not intended that they should be merged in the freehold. In that case, the road was built upon land under a license and permission of the owner."

In Ga. R. Co. v. Haas, 127 Ga. 187, 56 S. E. 313,

119 Am. St. Rep. 327, 330, 9 Ann. Cas. 677, it is said: "In *Charleston & N. C. Ry. Co.* v. *Hughes,* 105 Ga. 1, 30 S. E. 972, 70 Am. St. Rep. 17, where a life tenant had made a conveyance of land to a railroad company, and rails and ties forming a part of its line of railroad had been placed on such land, upon the death of the life tenant it was held that the remainderman could not, in an equitable proceeding, eject the company and claim the rails, ties, etc., but the railroad company could remove them, or pay for the land, not including them. In the case now before us there is no evidence of any intention on the part of the purchaser to abandon to the landowners the rails and fastenings, and the doctrine of the abandonment of trade fixtures has no application. There may have been an intention to take up the rails and then abandon the land, but the ·effort to remove the rails directly negatives any intention to abandon them. This is not a question of whether a *quasi* public corporation can abandon its franchises or cease to operate them at will; but a ·claim that the track and roadbed had both been ·abandoned and reverted to the original owners of the land, and that the rails were such a part of the realty that they could not be removed by the purchaser at a fore·closure sale or his transferee. See on this subject Elliott on Railways, sec. 998, p. 1447; *Wagner* v. *Cleveland & T. R. Co.,* 22 Ohio St. 563, 10 Am. Rep. ·770; 23 Am. & Eng. Ency. of Law, (2d ed.) ·706; *McNair* v. *Rochester R. Co.,* 59 Hun, 627, 14 N. Y. Supp. 39; *Justice* v. *Nesquehoning Valley R. Co.,* 87 Pa. 28; *Northern Central R. Co.* v. *Canton Co.,* 30 Md. 347." The court held that the landowner from whom the railroad obtained the right of way could not claim the rails and fastenings laid for the purpose of operating the road.

In *Helena, etc., Co.* v. *Northern Pac. R. Co.*, 62 Mont. 281, 205 Pac. 224, 21 A. L. R. 1080, it was said: "It is the general rule that where the superstructure of a railroad is placed upon the land of another, the railroad company cannot be said to have intended to attach the rails and other appliances to the land so as to make them a part thereof, and the rule ordinarily applies to side tracks and spurs constructed by the company to aid it in the discharge of its obligations as a public carrier, as well as those constructed for the purpose of accommodating the owners of manufacturing or like enterprises situated along or near its main line. *Wiggins Ferry Co.* v. *Ohio & M. R. Co.*, 142 U. S. 396, 35 L. Ed. 1055, 12 Supreme Ct. Rep. 188; *Ill. C. R. Co.* v. *Hoskins*, 80 Miss. 730, 92 Am. St. Rep. 612, 32 So. 150; *Wagner* v. *Cleveland & T. R. Co.*, 22 Ohio St. 563, 10 Am. Rep. 770; *Northern C. R. Co.* v. *Canton Co.*, 30 Md. 347; *Skinner* v. *Fort Wayne T. H. & S. W. R. Co.* (C. C.), 99 Fed. 465; *Ga. R. & B. Co.* v. *Haas*, 127 Ga. 187, 119 Am. St. Rep. 327, 56 S. E. 313, 9 Ann. Cas. 677; *Toledo A. A. & G. T. R. Co.* v. *Dunlap*, 47 Mich. 457, 11 N. W. 271; *Oregon R. & Nav. Co.* v. *Mosier*, 14 Ore. 519, 58 Am. Rep. 321, 13 Pac. 300."

Several of the cases cited are examined and considered at length in the opinion. A number of the cases cited are also reviewed by the annotator in 21 A. L. R., *supra*. It is said by the annotator, amongst other things: "In several cases the courts have held that a railroad track built as a spur or a switch, and the rails, plates and ties thereof are not to be considered realty but retain their character as personalty in spite of the fact that they have been affixed to the soil.

"This result was obtained in one case by virtue of considering a spur track to be in the nature of a trade

fixture and consequently an exception to the general rule governing disposal of personal property affixed to the realty. *Northern C. R. Co.* v. *Canton Co.* (1869), 30 Md. 347. * * The decision was further upheld on the ground that there was no intention that the railway should be merged in the freehold which it traversed. See to the same effect *Cayuga R. Co.* v. *Niles* (1878), 13 Hun. (N. Y.) 170."

In *Placer Co.* v. *Lake, etc., Co.*, 58 Cal. App. 764, 782, 209 Pac. 900, 907, it is said: "The public necessity or requirements or the very exigencies of its purposes may at any time make it convenient and to the interest of the public, as well as to itself, to abandon a certain right of way and remove its track and equipment to another, and therefore we think it only responsive to sound reason to say that while a railroad company lays its tracks and erects buildings for the proper conduct of its transportation business over and across lands under a claim of right, such property cannot be held to become a part of the realty but *will at all times retain the character of personalty.*" (Italics ours.)

The view thus expressed is sustained by a large number of cases to which we will make simple reference without reproducing the expressions found therein. A number of cases are cited to support the statement of the opinion.

In 11 R. C. L., p. 1080, it is said: "When a railroad has abandoned a track or has been ejected from land on which it has good reason to think it had acquired a right of way, it has been held that the rails and ties cannot be claimed as fixtures by the owner of the freehold, but may be removed by the railroad company."

In 23 Am. & Eng. Ency. of Law (2d ed.), page 706, it is said: "On the abandonment of its right of way a

railroad company has the right to remove its rails or stone piers built by it as a part of its road." In addition to the authorities cited, see also *St. Louis, etc., R. Co.* v. *Nyce*, 61 Kans. 394, 59 Pac. 1040, 48 L. R. A. 241; 33 Cyc. 227.

[3] While there is much evidence tending to show an abandonment of the easement, there is little, if any, tending to show an abandonment of the title to the rails. It is true that a long time elapsed between the actual use of the tramway and the taking up of the rails, and there were a number of breaks in the line, and this would be important in determining whether or not the *easement* had been abandoned. But this would not be true as to the rails in the absence of any other evidence of abandonment, where no title to them was asserted by the owners of the servient estates, no act of ownership was exercised over them by such owners and no notice given to remove them. In such case, the presumption is that they remained on the land with the consent or acquiescence of such owners.

The theory upon which the case was tried directed special attention to the non-use or abandonment of the right of way, and did not deal so specifically on this subject as to the rails, and the testimony on the latter subject is not clear and satisfactory, but we gather from the testimony for the plaintiffs that where the tramroad crossed the public highway in one place the rails were taken up and laid aside and the roadway graded. In one or more places where the tramroad was washed out, the rails were used to bridge the cavity; at another place a few of the rails were used to repair a fence, and in a number of places the ties had rotted and the rails had pulled loose from them, and were more or less scattered along the way.

On the other hand, it was shown by the defendant

that, so far as the rails were concerned, they had never by word or conduct evinced any intention to abandon them, had always claimed title to them and had appointed an agent in the neighborhood to look after them and he had stopped at least one of the parties from removing them; that in 1915 one of the plaintiffs had offered to purchase of the defendant the right of way through his land and an acre of ground at the railroad or canal station where the ore was stored; that the rails taken up at the road crossing were laid on the bank, or thrown aside; that "no rails were off the right of way except at Mr. Talley's," one of the plaintiffs; and that when they went to remove the rails from Talley's place he told them "to get them all, as he wanted them out of the way, and made no protest at all."

[4] The defendant was not bound to remove the rails within any specified time. So long as no claim of title to them was made by the plaintiffs, no objection raised to their remaining on the right of way, no notice given to remove them, and no act done by the plaintiffs which would bring home to the defendant notice that the plaintiffs intended to assert ownership over them, the defendant had the right to presume that the *status quo* of the rails remained unchanged.

[5, 6] Abandonment of tangible personal property means that the owner thereof voluntarily relinquishes possession thereof with the intention of terminating his ownership and with no intention of vesting title in another. When such property has been so abandoned, the first person who takes possession thereof for the purpose of ownership generally, and in the absence of special circumstances, acquires title thereto. But mere lapse of time and nonuser, unaccompanied by other evidence of intention, are generally not sufficient to

constitute an abandonment.    1 R. C. L., pp. 1, 6. The evidence in the instant case does not establish abandonment by the defendant, nor possession by the plaintiffs.

[7] While some of the instructions given for the defendant were erroneous, still, looking to the whole evidence in the case, no other verdict than the one found could have been properly found by the jury, even under proper instructions.    Where this is the case, it has been uniformly held by this court that the verdict will not be set aside. *Richmond, etc., R. Co.* v. *Garthright*, 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. Rep. 839; *Farmers' Asso.* v. *Kinsey*, 101 Va. 236, 43 S. E. 338; *Richmond P. & P. Co.* v. *Steger*, 101 Va. 319, 43 S. E. 612; *Southern R. Co.* v. *Oliver*, 102 Va. 710, 47 S. E. 862; *Homestead Ins. Co.* v. *Ison*, 110 Va. 18, 65 S. E. 463.

There is no error in the judgment of the trial court and it is affirmed.

*Affirmed.*

WEST, J., concurs in result.