# Richmond

## J. Cabell Messick v. Nellie McLane Barham.

December 1, 1952.

Record No. 4006.

Present, All the Justices.

The opinion states the case.

*Robert Lewis Young, Taylor, Hall & Martin* and *John B. Browder*, for the plaintiff in error.

*James, Richardson & James,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

We are called upon to review a verdict and judgment for $15,000 against appellant, J. Cabell Messick, for personal injuries sustained by appellee, Nellie McLane Barham.

The accident occurred about 7:30 p. m., May 25, 1950, on the northerly side of Linden avenue, in the city of Hampton. Linden avenue extends westerly and easterly between straight lines. The vehicular portion of the avenue is 34 feet wide from curb to curb. The sidewalk for pedestrians on its northerly side, at the point of the accident, is proximately 13 feet wide. Its concrete portion, about 6 feet wide, is on the northerly side about 7 or 8 feet from the curb. The area between the curb and the concrete pavement, except for the driveway hereinafter mentioned, is grass covered. Mrs. Barham and her husband lived on the south side of Linden avenue, and Messick, sometimes hereinafter referred to as the defendant, lived diagonally across the street, the westerly building line of his property being about 25 feet east of the easterly building line of Mrs. Barham's house. On the western side of defendant's house is a driveway about 6 feet wide running down a slight incline across the sidewalk to Linden avenue. From the curb line to the concrete portion of the sidewalk, the driveway is covered with concrete which fans out to a width of about 8 feet at the curb. North from the northern edge of the concrete portion of the sidewalk the driveway has two concrete runway strips, with a grass plot in between. The distance from the curb line to the steps of Messick's house is 26 feet. It is 8 feet from the center of those steps to the near side of an automobile parked in the driveway, approximately 13 feet north of the curb line of the street.

The evidence for the plaintiff shows that Mrs. Barham, with her husband and their two small children were returning home from Buckroe Beach. Her husband was driving a 1947 Pontiac two-door sedan of a "greenish" color. Mrs. Barham was sitting in its front seat, the children in the rear. The sun had set, it was "fairly dark," and the headlights of the car were on. When her car reached Linden avenue, her husband turned to his right, proceeded west on Linden avenue about a block and a half, and stopped close to the curb in front of the driveway to defendant's home about 5 feet behind other cars parked on the northern side of the avenue, with the right-hand door of his car about the

center of the driveway. The car was stopped solely for the purpose of letting Mrs. Barham and the two children get out to go to their home across the street, so that Mr. Barham could proceed westerly to his work in Newport News. When the car stopped, both Mr. and Mrs. Barham observed the car of the defendant, a Packard four-door sedan, standing in the Messick driveway, in the same position in which they had frequently seen it before, 18 to 20 feet from the curb. Its motor had not been started, none of its lights was turned on, and the Barhams saw no one around it. Immediately after they stopped, Mrs. Barham opened the right-hand door of her car, the door being hinged towards the front of the vehicle, got out, turned around facing inside the car, with its opened door behind her, and undertook to aid her husband in pulling the front seat forward to permit the children to get out. While thus engaged the opened car door was struck without warning by the rear of the automobile of the defendant, and violently forced against the lower portion of Mrs. Barham's legs. She and her husband said the motor of defendant's car was not running, and that it bore no lights. Upon being struck, the plaintiff screamed, and, thereupon, the defendant applied his brakes, his brake operated lights came on, his motor was started and he moved forward.

Mr. Barham testified that on the night of the accident, the defendant told him that "he (Messick) had allowed his car to roll back into the street and upon hearing me scream and my wife scream, had to start his car in order to pull it off of us and therefore was the reason for his long time in pulling his car ahead," and that "he had not seen my car due to the fact that he looked only to his right and did not look to the rear of his car or to the left of the car."

Mrs. Barham was severly injured, suffering fractures of both legs, and at the time of the trial was unable to resume her usual duties. The injury to her right leg was permanent according to her physician, and will continue to cause her trouble. The amount of the damages awarded her is not here questioned.

According to the defendant and his witnesses, Messick's automobile had been parked in its customary position in his driveway at 5:00 p. m. on the day in question when defendant returned home from his work. It was headed north with its rear end approximately 13 feet north of the curb line of Linden

avenue. Immediately before the accident defendant's mother-in-law, Mrs. Watkins, and his two sons left the Messick home, walked around the rear of defendant's automobile, entered through the left rear door, and sat upon the rear seat. Mrs. Watkins said that she saw no car stopped across the entrance to the driveway as she walked to the Packard, and that after she was seated she looked to the rear and there was still no car in sight. The defendant and his wife followed Mrs. Watkins from their home, and Mrs. Messick entered the car by its right front door. She said that before entering it she looked towards the street, and saw no car blocking the driveway at that time. Messick walked behind the rear of his automobile to enter it from the left side, and observed no car stopped in front of the driveway. He said that when he got to the left front door, he looked up the street westerly and over the top of the car easterly, and didn't see any cars coming; that he got in the car, shut the door, turned its lights on, started the engine, put one foot down on the clutch and the other on the foot brake, released the hand brake, put his head partly out the door window, looked backwards, released the foot brake gradually, and let the car roll down the slight incline of the driveway out of gear. Said he: "I was going to stop before I got to the curb to take another look before I hit—before I reached the curb, I had moved about 12 feet. * * * I heard metal, something like metal strike and someone screamed and I then looked—turned around this way and looked through the rear window (indicating) and I could see someone standing behind the door of an automobile, back to me, but couldn't make out who it was."

As soon as he heard the noises mentioned, he pushed the brake pedal all the way down to the floor, put the car in first gear, released the brake, and pulled up in the yard in order to free the person in the rear. He next got out, went back to where Mrs. Barham was sitting on the ramp of the driveway, and offered her assistance.

He said he noticed that the front of the bumper of the Pontiac was just about even with the easterly edge of the driveway. Later he said that the overhang of the open door of the Pontiac was in his driveway. He did not notice any headlights on the Pontiac until he had stopped and gotten out of his car. He observed a car parked on the north side of the avenue to the west of his driveway, approximately 30 to 35 feet distant.

Messick said it took him about three-quarters of a minute to leave his front door, get in his car, and start his engine. He stated that he could not say that he had put his head all of the way out of the window to look back. He remembered that he had discussed the accident with Mr. and Mrs. Barham; but did not recall any conversation with them relative to the physical facts attending it; but made no denial of the statement attributed to him. Seated as he was with his head out of the window as described, and looking backward, he admitted he could not get a full view of the driveway behind him, and that he did not look in his rear view mirror nor through the rear window of his car prior to the accident. He thought that his brake operated lights would show all the way across the street.

The defendant asks us to set aside the verdict of the jury and enter final judgment in his favor, or, in the alternative, award him a new trial. He has filed seventeen assignments of error. These assignments may be treated under three separate general headings, which are, first, that the defendant was not guilty of any actionable negligence; second, that the plaintiff was guilty of contributory negligence; and third, that the court erred in granting certain instructions for the plaintiff and in refusing other instructions for the defendant. In the consideration of these questions, other points raised in the case will be resolved.

The first two questions raise the contention that the place where plaintiff was injured was a portion of defendant's private driveway. We are not impressed with that contention.

Linden avenue is a public street, with its 34-foot center portion, confined between curb lines, principally designed for vehicular traffic and its sidewalks for pedestrian travel. It is generally accepted that the word "street" is all inclusive and means all that portion of a highway set apart and designated for such use, that is, embraces both that portion of the highway set apart for vehicular traffic and that part set aside for pedestrians. 40 Words and Phrases, Perm. Ed., page 277, *et seq.*

In *Jones* v. *Williamsburg*, 97 Va. 722, 724, 34 S. E. 883, 47 L. R. A. 294, this is said: "Streets, as popularly distinguished from sidewalks, though including the latter, are principally designed for the use of vehicles and animals and sidewalks for the use of pedestrians."

In construing a city ordinance authorizing sidewalks and

gutters along any street to be improved at the cost of the abutting property owners, this court in *McCrowell* v. *Bristol,* 89 Va. 652, 662, 16 S. E. 867, 20 L. R. A. 653, said: "It is true that a sidewalk along a public street is part of the street, * * *."

In *Wilson* v. *Wheeling,* 19 W. Va. 323, 42 Am. Rep. 780, the court held that a street includes its sidewalks.

"A sidewalk is a part of a street, * * *." *Frankfort* v. *Coleman,* 19 Ind. App. 368, 49 N. E. 474, 65 Am. St. Rep. 412.

■ The southern terminus of the defendant's private driveway stopped at his property line, that is, at the northern edge of the sidewalk. The sidewalk from his property line to the curb line is that portion of the street principally set aside for the use of pedestrians.

Virginia Code, 1950, § 46-212 (6) makes it unlawful for any person to "Drive a vehicle out of an alley, lane or building into a street without first bringing such vehicle to a stop immediately before entering such street."

Moreover, Virginia Code, 1950, § 46-240 further provides that "The driver of a vehicle entering a public highway from a private road or driveway shall, immediately before entering such highway, stop and, upon entering such highway, shall yield the right of way to all vehicles approaching on such public highway."

Virginia Code, 1950, § 46-263, provides that "No person shall park a vehicle or permit it to stand, whether attended or unattended, upon a highway in front of a private driveway * * *."

The first two mentioned statutes clearly made it the duty of the defendant to bring his vehicle to a stop immediately before entering upon a street or highway. That of course includes any part of the street or highway, such as a sidewalk.

■ To park a vehicle means something more than a transitory or momentary stoppage upon a highway for a proper or necessary purpose. To momentarily stop a car at the curb line of a street, without stopping its motor, for the mere purpose of discharging or taking on a passenger, or because of traffic conditions is not such a parking or standing as is contemplated by the statute. The distinction between parking and a momentary stopping is recognized by municipal authorities in the use of traffic signs which read "No Parking" on some streets and "No Stopping" on others. Thus, where parking is prohibited

within certain hours in a designated area, the prohibition does not apply to the mere stopping of a car for the purpose of taking on or discharging a passenger bound to or from a building in that area.

It is as much the duty of the driver of a car intending to back his car to give proper warning of his intention, and while backing to look where he is backing, as it is his duty to look to the front while proceeding forward and to give timely warning of his approach. Backing is naturally more dangerous than driving forward, and, therefore, should require no less care than the latter. *Hartzheim* v. *Smith*, 238 Wis. 55, 298 N. W. 196; *Taulborg* v. *Andresen*, 119 Neb. 273, 228 N. W. 528, 67 A. L. R. 642; *Frye* v. *Elkins*, 22 Tenn. App. 317, 122 S. W. (2d) 827.

In an Annotation entitled "Liability for damage or injury while automobile is being backed," 118 A. L. R. 242, the cases are reviewed and the general rule applicable under circumstances similar to those here is stated as follows on page 244: "In backing an automobile from a private driveway on to a public street, the driver must exercise that degree of caution that an ordinarily careful and prudent driver would exercise under similar circumstances." Here, we have also the statutory requirement to stop.

This brings us to the assignments relative to the negligence of the parties. In analyzing the evidence we find that the testimony of the defendant is not materially in conflict with plaintiff's version of the accident. The facts simply and briefly stated are these:

Plaintiff says that when her car drove up to the curb and stopped, she observed defendant's car in its usual parking place, motionless, unlighted and without any persons around it, and without anything to indicate that it was about to start in motion. She opened her car door, got out on the sidewak, turned her back to face the inside of the car, and while engaged in aiding her husband in turning the seat back to permit her children to get out, was struck without any warning.

Defendant says he saw no car in front of the driveway when he got in his car; that after sticking his head partly out of the side window, he looked backwards, turned his lights on, started his engine, put his foot on his clutch and foot brake, released his hand brake, then released his foot brake gradually and let

his car roll down the slight grade of the driveway, intending to stop before he got to the curb and take another look before he entered the vehicular portion of the street. When he had moved "about 12 feet," he heard the sound of metal striking and a scream. He then, for the first time, turned and looked through his rear window, saw someone standing behind the door of the car, with her back towards him; that as soon as he heard the noises he pushed his foot brake pedal all the way to the floor, put the car in first gear, and pulled up into the yard. He said that it was his intention when he got to the curb to stop, to put his car in gear, look up and down the street, and then proceed into the street. He did not look in his rear vision mirror, or through his rear window, or sound his horn. He evidently knew that there was a driving regulation which required him to bring his car to a stop immediatey before entering the street; but apparently he did not consider the sidewalk as a part of the street.

There is no contradiction of the evidence of plaintiff and her husband that their car had stopped, and Mrs. Barham had alighted and turned her back to defendant's car before any of its lights had been turned on, or his car was put in motion. It may be observed that there is no claim that the usual parking lights of the Packard were ever turned on. Events preceding an accident often occur in a matter of seconds. Accepting plaintiff's version, the events which Mr. and Mrs. Barham related might well have occurred during the interval of time which followed immediately after defendant had gotten in his car and was engaged in adjusting himself and the instruments of his car for its backward operation. The release of the foot brake of the Packard to permit its backward motion could have extinguished the brake operated lights after it started to roll, and before it collided with the door of the Pontiac.

Mrs. Barham was standing where she had a lawful right to stand, no warning was given her that the car parked on private property was about to be started in motion, and no signal of its approach was sounded. She had the right to assume that the defendant would obey the law and perform his duty, and to act upon that belief until the contrary appeared. *Millard v. Cohen,* 187 Va. 44, 51, 46 S. E. (2d) 2.

According to defendant's own testimony, he violated the statutory provisions relating to the operation of his car. He

not only failed to stop before entering the street; but he failed to take the precautions which an ordinarily prudent and cautious person would have taken in its backward movement. A mere look upwards in his rear view mirror, or a single glance over his shoulder through the rear window, would have disclosed the presence of plaintiff's car before he reached the edge of the sidewalk. It is as much the duty of the driver of a car to keep and maintain a proper lookout after his car starts to move as it is to look before it moves. A simple test will show that, situated as he said he was, Messick could not get a proper view of the entrance to his driveway by partly looking out of his side window.

■ ■ We conclude that the evidence clearly shows that defendant was guilty of negligence as a matter of law. His own testimony and admissions confirm us in that belief. Although the judge of the trial court said it was difficult for him to see where Mrs. Barham was guilty of any negligence, he submitted that question to the jury, and the jury found in her favor. Generally, the issue of contributory negligence is a jury question, the burden of proof of such negligence being on the defendant. But where there is no such evidence, there is no question for the jury, and we think that is the situation here. It does not appear to us that reasonable men could differ in the conclusion that the evidence fails to show that the plaintiff was guilty of contributory negligence. Accordingly, it is our opinion that no proper verdict other than one favorable to the plaintiff could have been found.

In view of what has been said, it is hardly necessary to notice errors assigned to the giving and refusal of instructions; but it may not be amiss to point out the errors complained of. Nine instructions were given at the request of the plaintiff and eight for the defendant, much too many, in view of the real issues in the case.

■ The defendant relies principally upon errors assigned to instructions 3, 4, 5, 6, 9 and 11, given for the plaintiff. We find nothing substantially wrong until we reach instruction No. 4. In that instruction the jury were told that they should find for the plaintiff if they believed that ''the defendant negligently backed his automobile, *without first observing that the same could be done in safety,* and that, in backing his automobile, he struck the plaintiff while she was exercising ordinary care for

her own safety, * * *.'' (Italics added). The objection was based on the ground that this language made the defendant an insurer, whereas, he only owed plaintiff the duty to exercise ordinary and reasonable care under the circumstances. The objection was well taken.

In *Smith* v. *Clark,* 187 Va. 181, 186, 189, 46 S. E. (2d) 21, we reversed because of an instruction which told the jury that the law required the defendant before turning left from his direct line of travel, ''to see that said left-hand turn can be made in safety,'' since the instruction overlooked the requirement that the defendant could only be held liable for failure to use reasonable and ordinary care under the circumstances. This ruling was approved in *Oliver* v. *Forsyth,* 190 Va. 710, 58 S. E. (2d) 49.

The introductory portion of instruction No. 6, told the jury, ''that the backing of an automobile is fraught with greater danger than driving it forward * * *.'' This factual appraisal of the situation by the court invaded the province of the jury. It was for them to measure the danger and the conduct of the defendant and determine from all the facts in the case whether the defendant failed to exercise reasonable and ordinary care under all of the circumstances. *McDowell* v. *Crawford,* 11 Gratt. (52 Va.) 377, 379, 402; *Cornett* v. *Rhudy,* 80 Va. 710, 716.

Instructions numbered 11 and H, given for plaintiff and defendant respectively, relate to the doctrine of the last clear chance. No such instruction was applicable in this case. There was no evidence that sufficient time elapsed after plaintiff's car stopped in front of the driveway to give the defendant, after he discovered, or should have discovered, the plaintiff in peril, a clear opportunity to avoid striking her. Moreover, instruction 11 was predicated on the contributory negligence of the plaintiff. If she was guilty of contributory negligence, she was not entitled to recover.

While some of the other instructions are badly expressed and too broad in the statement of the principles involved, in view of our conclusion that no proper verdict other than one favorable to the plaintiff could have been found, the errors complained of were harmless.

In *Talley* v. *Drumheller,* 143 Va. 439, 450, 130 S. E. 385, 388, we held that if upon a view of the whole evidence, no other verdict could have properly been found, even under proper

instructions, the verdict will not be set aside. In that case, 143 Va., at page 450, this was said:

"While some of the instructions given for the defendant were erroneous, still, looking to the whole evidence in the case, no other verdict than the one found could have been properly found by the jury, even under proper instructions. Where this is the case, it has been uniformly held by this court that the verdict will not be set aside. *Richmond Ry., etc. Co.* v. *Garthright,* 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. Rep. 839; *Farmers' Benev. Fire Ins. Ass'n* v. *Kinsey,* 101 Va. 236, 43 S. E. 338; *Richmond Passenger, etc., Co.* v. *Steger,* 101 Va. 319, 43 S. E. 612; *Southern R. Co.* v. *Oliver,* 102 Va. 710, 47 S. E. 862; *Homestead Fire Ins. Co.* v. *Ison,* 110 Va. 18, 65 S. E. 463."

Mr. Justice Buchanan in *Oliver* v. *Forsyth, supra,* cites the above ruling with approval. (190 Va. 710).

For the reasons stated and inasmuch as the amount of damages presented a jury question, and the instruction relative thereto told the jury the correct measure, the judgment of the trial court is affirmed.

*Affirmed.*